_____

No. 15-1102 (L)
_____

## UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

DONNA CISSON and DAN CISSON,

      Plaintiffs – Appellees/Cross Appellants,

v.

C.R. BARD, INCORPORATED,

      Defendant – Appellant,

SAMUEL S. OLENS, Attorney General of the State of Georgia,

      Intervenor.

_____

On Appeal from the United Stated District Court
For the Southern District of West Virginia
No. 2:11-cv-00195
_____

## BRIEF OF INTERVENOR SAMUEL S. OLENS, ATTORNEY GENERAL
## FOR THE STATE OF GEORGIA

Please serve:

SAMUEL S. OLENS      551540
Attorney General

Julie Adams Jacobs
Senior Assistant Attorney General
40 Capitol Square, S.W.      W. WRIGHT BANKS, JR.      036156
Deputy Attorney General

E-mail: jjacobs@law.ga.gov      JULIE ADAMS JACOBS      003595
(404) 463-5989      Senior Assistant Attorney General
Fax:  (404) 657-3239

<u>15-1102 (L)</u>

<u>Donna Cisson v. C.R. Bard, Inc.</u>

CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure and Local Rule 26.1, counsel of record for Intervenor Samuel S. Olens, Attorney General for the State of Georgia, hereby makes the following disclosure:

1. Is party/amicus a publicly held corporation or other publicly held entity?  No.

2. Does party/amicus have any parent corporations?  No.

3. Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?  No.

4. Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?  No.

5. Is party a trade association?  No.

6. Does this case arise out of a bankruptcy proceeding? No.


<u>/s/ Julie Adams Jacobs          </u>
JULIE ADAMS JACOBS        003595
Senior Assistant Attorney General
*Counsel for Intervenor Samuel S. Olens,*
*Attorney General for the State of Georgia*

ii

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ........................................ ii

TABLE OF CONTENTS......................................................... iii

TABLE OF AUTHORITIES ...................................................... v

STATEMENT OF THE ISSUES.................................................. 1

INTRODUCTION .............................................................. 2

STATEMENT OF THE CASE................................................... 3

SUMMARY OF THE ARGUMENT ........................................... 4

ARGUMENT .................................................................. 6

    A. The District Court Correctly held that O.C.G.A. § 51-12-5.1(e)(2) is
    Constitutional................................................................. 6

    B. The District Court and Georgia Supreme Court's Analysis is
    Consistent with Existing Precedent in Other Jurisdictions ................ 11

        1. The District Court Properly Held that Plaintiffs do not have a
        Property Right in Punitive Damages which are Cognizable under
        the Takings Clause ..................................................... 11

        2. The District Court Properly Held that Georgia's Punitive Damages
        Statute does not Violate the Equal Protection Clause ............... 16

    C. As a Matter of Public Policy, Punitive Damages in Product Liability
    Cases are intended to Punish and Deter, not Create a Windfall for
    Claimants .................................................................. 17

    D. The District Court's Order and the Jury's Verdict Should be Upheld .......... 20

CONCLUSION ................................................................................................23

STATEMENT REGARDING ORAL ARGUMENT ............................................24

CERTIFICATE OF COMPLIANCE......................................................................25

CERTIFICATE OF SERVICE ...........................................................................26

TABLE OF AUTHORITIES

**Cases**

*Bridges v. Phillips Petroleum Comp.*, 733 F.2d 1153 (5th Cir. 1984) ......................... 18

*Cheatham v. Poole*, 789 N.E.2d 467 (Ind. 2003) ....................................... 13

*DeMendoza v. Huffman*, 51 P.3d 1232 (Or. 2002) ....................................... 14

*Engquist v. Oregon Department of Agriculture*, 478 F.3d 985 (9th Cir. 2007) ........ 8,12

*Evans v. State*, 56 P.3d 1046 (Alas. 2002) ..................................................... 8

*Ford v. Uniroyal Goodrich Tire Co.*, 267 Ga. 226, 476 S.E.2d 565 (1996) ..... 5, 7, 8,10

*Fust v. Attorney General for the State of Missouri*, 947 S.W.2d 424 (Mo. 1997) ....... 14

*Gordon v. Florida*, 507 U.S. 1005 (1993) .................................................... 15

*Gordon v. State*,  585 So. 2d 1033 (Fla. App. 1992) ................................. 8, 14

*Mack Trucks, Inc. v. Conkle*, 263 Ga. 539, 436 S.E.2d 635 (1993) ..................... *passim*

*McBride v. General Motors Corp.*, 737 F. Supp. 1563 (M.D. Ga. 1990). ............. 5,8,16

*Reust v. Alaska Petroleum Contractors, Inc.*, 127 P.3d 807 (Alaska 2005) ............... 13

*Shepherd Components, Inc. v. Brice Petrides-Donohue & Assocs.*,
    473 N.W.2d 612 (Iowa 1991) ................................................................ 14

*Smith v. Price Dev. Co.*, 125 P.3d 945 (Utah 2005) ...................................... 15

*State v. Moseley*, 263 Ga. 680, 436 S.E.2d 632 (Ga. 1993)................................. *passim*

*TXO Prod. Corp. v. Alliance Res. Corp.*, 509 U.S. 456-57 (1993) ............................ 22

**Statutes**

O.C.G.A. § 15-12-5.1..........................................................................*passim*

 **Other Authorities**

*Janet V. Hallahan, Social Interests Versus Plaintiffs' Rights: The Constitutional Battle Over Statutory Limitations on Punitive Damages, 26 Loy. U. Chi. L.J. 405, 410 (1995* ....................................................................................................6

*E. Jeffrey Grube, Note, Punitive Damages: A Misplaced Remedy, 66 S. CAL. L. REV. 839, 853 (1993)*...........................................................................19

*Malcolm E. Wheeler, The Constitutional Case for Reforming Punitive Damages Procedures, 69 VA. L. REV. 269, 292 (1983)*.............................................19

*A Misplaced Remedy*, 66 S. CAL. L. REV. 839 (1993) ...............................19

<u>STATEMENT OF THE ISSUES</u>

1. Whether the District Court erred in finding O.C.G.A. § 51-12-5.1(e)(2), which allocates seventy-five (75) percent of punitive damage awards in product liability cases to the State's Treasury, constitutional.

## INTRODUCTION

This case involves one of many product liability actions filed against C.R. Bard, Inc., the Defendant-Appellant (hereinafter "Defendant"), related to its pelvic repair mesh devices. (Joint Appendix (hereinafter, "JA"): 7149). A jury awarded Donna and Dan Cisson, the Plaintiffs-Appellees/Cross-Appellants (hereinafter "Plaintiffs"), $250,000 in compensatory damages and $1,750,000 in punitive damages. (JA: 6736-38). Under Georgia's punitive damages statute, O.C.G.A. § 51-12-5.1(e)(2), seventy-five (75) percent of punitive damage awards in product liability cases, less the costs of litigation and attorney's fees, belong to the State's Treasury. Plaintiffs have challenged the constitutionality of Georgia's punitive damages statute through this litigation. Attorney General Olens has intervened in this matter for the limited purpose of defending the constitutionality of the statute.

The District Court, in a well-reasoned decision, flatly rejected Plaintiffs' challenges to Georgia's punitive damages statute, finding that the statute comports with both the Equal Protection Clause and the Takings Clause. (JA: 7128-35). The District Court aptly took note of the fact that the Georgia Supreme Court, in a trio of cases, also examined Georgia's punitive damages statute and determined that it is constitutional as a matter of both federal and state law. (JA: 7131-33). Moreover, courts across the nation have evaluated punitive damage schemes similar to Georgia's and agreed that there are no violations of the United States

2

Constitution. The only authority in which Plaintiffs find support is an outdated federal district court case that has been broadly and uniformly criticized. Because Plaintiffs have failed to demonstrate violations of either the Due Process Clause, the Equal Protections Clause or the Takings Clause, the District Court's Order must be affirmed.

## STATEMENT OF THE CASE

On March 10, 2011, Plaintiffs filed this action in the Northern District of Georgia seeking, among other relief, punitive damages from Defendant. (JA: 62-63). On March 28, 2011, the matter was transferred to the Southern District of West Virginia, pursuant to Rule 7.1 of the Rules of Procedure of the United States Judicial Panel on Multidistrict Litigation. (JA: 9). After trial, the jury returned a verdict for Plaintiffs on August 15, 2013, awarding the Plaintiffs $250,000.00 in compensatory damages, and $1,750,000.00 in punitive damages. (JA: 673-38). On November 15, 2013, Plaintiffs filed the Ancillary Motion for the Court to Declare that O.C.G.A. § 51-12-5.1(e)(2) is Unconstitutional, and served notice on the Georgia Attorney General. (JA: 7054).

Attorney General Olens timely filed a Motion to Intervene under Rule 5.1(c) of the Federal Rules of Federal Procedure. (JA: 7106). The Court granted Attorney General Olens' Motion on February 6, 2014. (JA: 7109). Attorney General Olens filed a Memorandum of Law in Opposition to Plaintiffs' Motion to Declare that

O.C.G.A. § 51-12-5.1(e)(2) is Unconstitutional.  (JA: 51).  On January 20, 2015,

the District Court entered an Order denying Plaintiffs Motion on the basis that

O.C.G.A. § 51-12-5.1(e)(2) does not violate either the Equal Protection Clause of

the Fourteenth Amendment or the Takings Clause of the Fifth Amendment, which

is applicable to the states through the Fourteenth Amendment. (JA: 7128).

Defendant filed a Notice of Appeal to which Plaintiff filed a Cross-Appeal to this

Court.  Plaintiffs again challenge the constitutionality of O.C.G.A. § 51-12-

5.1(e)(2). This appeal follows.

SUMMARY OF THE ARGUMENT

The Georgia General Assembly, as part of the Tort Reform Act of 1987,

created a new provision allocating seventy-five (75) percent of punitive damage

awards in product liability cases, less the costs of litigation and attorney's fees, to

the State's Treasury.  The District Court has flatly rejected Plaintiffs' contention

that Georgia's punitive damages statute violates the Equal Protection Clause of the

Fourteenth Amendment and the Takings Clause of the Fifth Amendment of the

United States Constitution. The District Court found "no constitutional

shortcomings" in Georgia's punitive damages statute.  (JA: 7130).  Specifically,

the District Court held that the state's interest provides a rational basis for its

allocation of punitive damages between plaintiffs and its citizenry for purposes of

the Equal Protection Clause and that Plaintiffs do not have a property interest in

4

the award of punitive damages which would violate the Takings Clause.  (JA: 7133, 7135).

The District Court properly noted that the Supreme Court of Georgia has reviewed the constitutionality of the punitive damages statute and found it to be constitutional on three occasions.[1]  (JA: 7131-32).  Likewise, numerous state and federal courts have held similar statutes in other states to be constitutional.  In fact, Plaintiffs challenge the constitutionality of Georgia's punitive damages statute by largely relying on a federal district court case decided **before** the Georgia Supreme Court reviewed the constitutionality of O.C.G.A. § 51-12-5.1(e)(2).  *See McBride v. General Motors Corp.*, 737 F. Supp. 1563 (M.D. Ga. 1990).  Even the court in *McBride* confessed that:

> the Court has carefully considered the briefs and documents submitted to it in an effort to perceive how the Georgia Supreme Court would rule with regard to the state constitutional questions presented.

737 F. Supp. at 1566.  The court in *McBride* found that O.C.G.A. § 51-12-5.1(e)(2) violated the Due Process and Equal Protection clauses of the Georgia and U.S. Constitutions.  *Id.* at 1579.  However, in 1993 the Georgia Supreme Court held that O.C.G.A. § 51-12-5.1(e)(2) was constitutional under the Georgia and federal

---

[1] *See Ford v. Uniroyal Goodrich Tire Co.*, 267 Ga. 226, 476 S.E.2d 565 (1996); *State v. Moseley*, 63 Ga. 680, 436 S.E.2d 632 (1993); and *Mack Trucks, Inc. v. Conkle*, 263 Ga. 539, 436 S.E.2d 635 (1993).

5

constitutions in two separate cases, *Mack Trucks*, *Inc. v. Conkle*, 263 Ga. 539, 436

S.E.2d 635 (1993), and *State v. Moseley*, 263 Ga. 680, 436 S.E.2d 632 (Ga. 1993).

Moreover, the "current trend in both state and federal courts is to uphold the

constitutionality of [split-recovery punitive damages] statutes - - a trend which

signals judicial acceptance of the power of legislatures to prioritize other societal

interests over the traditional purposes of punitive damages." Janet V. Hallahan,

*Social Interests Versus Plaintiffs' Rights: The Constitutional Battle Over Statutory*

*Limitations on Punitive Damages*, 26 Loy. U. Chi. L.J. 405, 410 (1995). For these

reasons, Attorney General Olens submits that Georgia's punitive damages statute

does not violate the Due Process or Takings Clauses of the United States

Constitution, and this Court should affirm the District Court's Order in this case.

## ARGUMENT

### A. The District Court Correctly held that O.C.G.A. § 51-12-5.1(e)(2) is Constitutional.

The District Court correctly held that O.C.G.A. § 51-12-5.1(e)(2) does not

violate the Constitution. (JA: 7132). Specifically, the District Court correctly held

that Plaintiffs did not have a constitutionally protected property interest in the

jury's award of punitive damages under the Takings Clause of the Fifth

Amendment, which is applicable to the states through the Fourteenth Amendment.

(JA: 7131). In so holding, the District Court properly looked to state law to

determine whether plaintiffs have an interest in the property at issue (i.e., the

punitive damages) exists. (*Id.*, citing *Bd. of Regents of State Colls. v. Roth*, 408

U.S. 564, 577 (1972).

O.C.G.A. § 51-12-5.1(e) provides:

> (1)  In a tort case in which the cause of action arises from product liability, there shall be no limitation regarding the amount which may be awarded as punitive damages. Only one award of punitive damages may be recovered in a court in this state from a defendant for any act or omission if the cause of action arises from product liability, regardless of the number of causes of action which may arise from such act or omission.

> (2) Seventy-five percent of any amounts awarded under this subsection as punitive damages, less a proportionate part of the costs of litigation, including reasonable attorney's fees, all as determined by the trial judge, shall be paid into the treasury of the state through the Office of the State Treasurer. Upon issuance of judgment in such a case, the state shall have all rights due a judgment creditor until such judgment is satisfied and shall stand on equal footing with the plaintiff of the original case in securing a recovery after payment to the plaintiff of damages awarded other than as punitive damages. A judgment debtor may remit the state's proportional share of punitive damages to the clerk of the court in which the judgment was rendered. It shall be the duty of the clerk to pay over such amounts to the Office of the State Treasurer within 60 days of receipt from the judgment debtor. This paragraph shall not be construed as making the state a party at interest and the sole right of the state is to the proceeds as provided in this paragraph.

The Georgia Supreme Court has upheld the constitutionality of this statute

on three occasions.  *See Ford,* 267 Ga. at 231; *Moseley*, 263 Ga. at 681; and *Mack*

*Trucks*, 263 Ga. at 544.  As discussed in more detail below, and as noted by the

7

District Court, the only other case to address the constitutionality of Georgia's

punitive damages statute is *McBride*, which predates the three Georgia Supreme

Court cases.  The District Court correctly interpreted the purpose of O.C.G.A. §

51-12-5.1(e) as stated by the Georgia Supreme Court, the highest court in the State

of Georgia. (JA: 7133).

Plaintiffs rely almost exclusively on *McBride*, a case which the Georgia

Supreme Court, and many other courts, have flatly rejected. *See Engquist v.*

*Oregon  Dep't of Agriculture*, 478 F.3d 985, 1006 n.23 (9th Cir. 2007); *Evans v.*

*State*, 56 P.3d 1046, 1058 n.71 (Alas. 2002); *Gordon v. State*, 585 So. 2d 1033,

1037 n.9 (Fla. App. 1992) (finding the "brief discussion" in *McBride* to be

"completely unpersuasive"), *affirmed by Gordon v. State*, 608 So. 2d. 800 (Fla.

1992), *cert. denied*; *see generally Ford v. Uniroyal Goodrich Tire Co.*, 476 S.E.2d

565 (Ga. 1996); *Mack Trucks*, 436 S.E.2d 635 (Ga. 1993); *State v. Moseley*, 436

S.E.2d 632 (Ga. 1993).  As a result, Plaintiffs' argument necessarily fails.

In *Mack Trucks*, the Georgia Supreme Court held that the statute's seventy-

five (75) percent allocation of punitive damages to the state does not deny due

process or constitute a taking under either the Georgia or United States

constitutions.  436 S.E.2d at 637-640.  The court recognized well-established

precedent providing that "there is no constitutional right to an award of punitive

damages." *Id.* at 638.  The court further noted that "[t]he clearly stated purpose of

the statute," including subsection (e), "is to punish and deter the defendant in a tort action" and "not to provide compensation, or . . . a windfall to an individual plaintiff." *Id.*

The Georgia Supreme Court also upheld the General Assembly's distinction between product liability cases and other tort actions. "In a case in which the cause of action arises from product liability the risk falls on society as well as on the individual plaintiff who has been harmed," and "[b]ecause of the potential ability to damage numerous citizens, the defendant may be punished by the imposition of unlimited damages, but this may occur only one time." *Id.* at 639. "As the risk and harm are distributed between the individual plaintiff and all citizens of Georgia, the legislature [saw] fit to distribute a portion of the damages awarded to those at potential risk – all citizens of the state." *Id.* The court held that the distinction between product liability and other actions is "not arbitrary" and does not violate equal protection, because "all *similarly situated* plaintiffs and defendants, including those in product liability actions, are treated equally. *Id*. The court further held that subsection (e)(2) does not effectuate a taking because "[a] plaintiff has no vested property right in the amount of punitive damages which can be awarded in any case, and the legislature may lawfully regulate the amount of punitive damages which can be awarded." *Id*.

9

It appears that Plaintiffs erroneously contend that the District Court, citing

the Georgia Supreme Court in *Mack Trucks* and *Moseley*, failed to apply the

rational basis standard of review required by U.S. Supreme Court precedent.

(Plaintiff's Opening Brief, p. 93). The District Court did apply the rational basis

standard to Plaintiffs' equal protection challenge, asserting that "to satisfy the

Equal Protection Clause, the statute must be 'rationally related to a legitimate state

interest.'" (JA: 7131). The District Court specifically found "a rational basis for

allocating the punitive damages award between the citizenry and the plaintiff."

(JA: 7133). The Court took particular notice that in *Mack Trucks*, the court applied

the correct test in analyzing the equal protection challenge, expressly stating that

the statute must "withstand an equal protection challenge under the rational basis

test, which the parties concede is applicable here." 436 S.E.2d at 638. Similarly, in

*Moseley*, the court followed *Mack Trucks* in holding that O.C.G.A. § 51–12–

5.1(e)(2) "does not violate equal protection, [and] does not violate the 'Takings'

clauses of the United States and Georgia Constitutions." 436 S.E.2d at 633.

Finally, in *Ford v. Uniroyal Goodrich Tire Co.*, 476 S.E.2d 565 (Ga. 1996),

the Georgia Supreme Court again affirmed the constitutionality of O.C.G.A. § 51–

12–5.1(e), holding that the statute "benefits all Georgia citizens who risk suffering

harm from the defendant's acts." 476 S.E.2d at 570. Restating its position in

*Mack Trucks*, the court reemphasized that "the goal" of O.C.G.A. § 51–12–5.1(e)

10

"is to punish and deter the defendant," such that it is "insignificant . . . that the plaintiff does not receive the full award." *Id*. (quoting *Mack Trucks*, 436 S.E.2d at 639).

### B. The District Court and Georgia Supreme Court's Analysis is Consistent with Existing Precedent in Other Jurisdictions.

The District Court's analysis is consistent with the Georgia Supreme Court's construction of O.C.G.A. § 51–12–5.1(e) and is also consistent with the decisions of other courts that have addressed the same or similar issues in rejecting challenges to statutes awarding punitive damages to a state government.

### 1. The District Court Properly Held that Plaintiffs do not have a Property Right in Punitive Damages which are Cognizable under the Takings Clause.

Plaintiffs contend that O.C.G.A. § 51–12–5.1(e) "establish[es] a constitutionally protected entitlement to punitive damages." (Plaintiffs' Opening Brief, p. 93.)  Plaintiffs further argue that they "possess a vested property interest" in the judgment that is being infringed upon by the State of Georgia in violation of the Takings Clause of the Fifth Amendment.  *Id.* at 93.  Plaintiffs provide no support for this assertion.  Rather, Plaintiffs ignore the overwhelming weight of authority holding that split-recovery punitive damages statutes, such as Georgia's, do not effectuate an unconstitutional taking of property because a plaintiff does not have a cognizable property right to a prospective punitive damages award.  Put simply, the State cannot confiscate a property right that does not exist.  There is no

11

constitutional violation of the Takings Clause and the District Court's Order should be upheld.

Under the Fifth Amendment, "private property[2] [shall not] be taken for public use, without just compensation."  U.S. Const. amend. V.  In *Engquist v. Oregon Department of Agriculture*, 478 F.3d 985 (9th Cir. 2007), the United States Court of Appeals for the Ninth Circuit determined, under a state split-recovery statute similar to Georgia's, that a plaintiff's "interest in [a] punitive damages award is not a property right cognizable under the Takings Clause, because punitive damages awards are necessarily contingent and discretionary." *Id.* at 1002.

Moreover, in drawing a distinction between compensatory damages, which are mandatory once liability is found, and punitive damages, which "are never awarded as of right, no matter how egregious the defendant's conduct," *Engquist* held that a plaintiff's interest in punitive damages "is too speculative to constitute property under the Takings Clause." *Id.* at 1003 (citation omitted); *see Id.* at 1004 (describing "a plaintiff's interest in punitive damages" as "contingent" and "uncertain" that "does not qualify as 'property' under the Takings Clause").  The court's rejection of the plaintiff's Takings Clause challenge to the state's split-recovery statute was "bolstered by [its] consideration of the deterrence and

---

[2] "Private property" is defined as property that is "protected from public appropriation – over which the owner has exclusive and absolute rights."  Blacks Law Dictionary (7th Ed. 1999)

punishment justifications for punitive awards." *Id.* at 1002. *Enqquist*'s holding that punitive damages are not a protectable property interest under the Fifth Amendment is consistent with the Georgia Supreme Court's decision in *Mack Trucks*, as well as the majority of decisions from other state supreme courts that have upheld similar split-recovery statutes against federal Takings Clause challenges.

Most recently, in *Reust v. Alaska Petroleum Contractors, Inc.*, 127 P.3d 807 (Alaska 2005), the Supreme Court of Alaska held that the state's split-recovery statute, which allocates Fifty (50) percent of a punitive damages award to the state general fund, does not effect a taking because it constitutes a cap on the amount of punitive damages that may be awarded before any award is actually rendered to the plaintiff. The court found that the plaintiff "could not reasonably expect to recover more than half of her punitive damages award." *Id.* at 823. Likewise, in *Cheatham v. Poole*, 789 N.E.2d 467 (Ind. 2003), the Supreme Court of Indiana determined that the state's split-recovery provision, requiring defendants to pay a punitive damages award to the clerk of the court who deposits seventy-five (75) percent of that award to the state treasury, did not violate the federal Takings Clause because "[t]he Indiana legislature [had] chosen to define the plaintiff's interest in a punitive damages award as only twenty-five (25) percent of any award." *Id.* at 473, 475. Similarly, the Supreme Court of Iowa held that a plaintiff

13

has no vested right to an award of punitive damages, upholding the states' split-recovery statutes that allocated portions of a plaintiff's punitive damages award to the state. *Shepherd Components, Inc. v. Brice Petrides-Donohue & Assocs.*, 473 N.W.2d 612, 619 (Iowa 1991).[3]

The Florida Supreme Court similarly rejected an argument that its statute, which allocates sixty (60) percent of punitive damage awards to the State, was an unconstitutional taking without due process, basing its holding on the fact that the plaintiff had no "right" to recover punitive damages in the first place. *See Gordon v. State*, 608 So. 2d 800, 801-02 (Fla.1992), *cert. denied,* 507 U.S. 1005 (1993). The *Gordon* court rejected plaintiff's substantive due process argument, holding that the statute need only bear a "rational relationship to legitimate legislative objectives," (1) to punish defendants for a public wrong and thereby deterring similar future conduct and (2) "to discourage punitive damages claims by making

---

[3] The Oregon Supreme Court has also upheld the constitutionality of its split-recovery statute, which allocates sixty (60) percent of a punitive damages award to the state, but has decided the question only under the state constitutional takings provision. *See DeMendoza v. Huffman*, 51 P.3d 1232, 1245-47 (Or. 2002) (plaintiff does not have a vested prejudgment interest in a punitive damages award). In *Fust v. Attorney General for the State of Missouri*, 947 S.W.2d 424 (Mo. 1997), the Missouri Supreme Court rejected a claim by the plaintiffs that the allocation of fifty (50) percent of a punitive damages award to the state denied them of a property right in their cause of action without due process of law. *Id*. at 431. The court in *Fust* reasoned that when the plaintiffs' claim for punitive damages arose, "they acquired no more than a fifty (50) percent interest in such a judgment as would be entered for punitive damages." *Id*.

them less remunerative to the claimant and the claimant's attorneys." *Id*. at 802.

This Court should take specific notice of the fact that the plaintiffs in *Gordon* filed

a Petition for Certiorari to the United States Supreme Court, which was denied.

*Gordon v. Florida*, 507 U.S. 1005 (1993).

The District Court in this case correctly recognized that Georgia's statute

grants the state an interest in the award at the time judgment is entered, *see*

O.C.G.A. § 51–12–5.1(e)(2) ("[u]pon issuance of judgment …, the state shall have

all rights due a judgment creditor until such judgment is satisfied and shall stand

on equal footing with the plaintiff of the original case in securing a recovery after

payment to the plaintiff of damages awarded other than as punitive damages"), and

permits the defendant to "remit the state's proportional share of punitive damages

to the clerk of the court," who in turn "pay[s] over such amounts to the Office of

the State Treasurer." *Id.*; *see Smith v. Price Dev. Co.*, 125 P.3d 945, 950 n. 5 (Utah

2005) (split-recovery statute making the state a judgment creditor "would

dramatically affect" the *Smith* analysis offered by the Colorado court). As such,

Plaintiffs have no expectation to receive any more than a twenty-five (25) percent

interest in the punitive damages award, and the District Court properly held that

O.C.G.A. § 51–12–5.1(e)(2) does not effectuate a taking under the Fifth

Amendment.  (JA: 7135).

### 2.  The District Court Properly Held that Georgia's Punitive Damages Statute does not Violate the Equal Protection Clause.

Despite the well-reasoned Order of the District Court in this matter and the Georgia Supreme Court's consistent holdings on the constitutionality of O.C.G.A. § 51–12–5.1(e), Plaintiffs rely exclusively on *McBride*, to support their contention that the District Court did not "properly apply the rational basis standard of review."[4]  (Plaintiff's Opening Brief, p. 93) . The District Court correctly rejected the decision in *McBride* and appropriately held that O.C.G.A. § 51–12–5.1(e) does not violate the Equal Protection Clause.

*McBride*, which predates all of the Georgia Supreme Court decisions pertinent to this issue, held that that the State's receipt of seventy-five (75) percent of a product liability punitive damage award "denies equal protection to product liability punitive damage plaintiffs by favoring non-product liability punitive damage plaintiffs by the 75% state confiscation levied against the former but not the latter." *McBride*, 737 F.Supp. at 1578.  The Georgia Supreme Court subsequently addressed this issue in *Mack Trucks*:

> [W]e think that the purpose of this subsection is to authorize punishment of a defendant who has the potential to greatly damage society at large. The statute furthers this purpose by not allowing the first plaintiff to reach the courthouse with a product liability lawsuit to reap a windfall from the punitive

---

[4] As the rational basis test is the standard of review used when considering constitutional questions under the Equal Protection Clause, Intervenor assumes this issue is again being raised here as it was before the District Court.

> damages, but instead requiring that three-quarters of the
> punitive damages awarded be paid into the state treasury for the
> benefit of all Georgia citizens. Punishment and deterrence of
> the defendant being the purposes of the subsection, it is
> insignificant under the statute that the plaintiff does not receive
> the full award.

436 S.E.2d at 638.  Moreover, "[a]s the risk and harm are distributed between the

individual plaintiff and all citizens of Georgia [in the product liability context], the

legislature has seen fit to distribute a portion of the damages awarded to those at

potential risk—all citizens of the state." 436 S.E. at 639.

*Mack Trucks* recognized that the allocation of punitive damages between the

state and the plaintiff in product liability cases should be different than in other

instances of tortious conduct, in which the defendant places only an individual at

risk and, accordingly, "the individual is entitled to retain all punitive damages

awarded him." *Id.* The statute accordingly does not violate equal protection,

because product liability plaintiffs and plaintiffs seeking punitive damages in other

actions are not similarly situated.  *Id.*

### C. As a Matter of Public Policy, Punitive Damages in Product Liability Cases are intended to Punish and Deter, not Create a Windfall for Claimants.

As a matter of Georgia law, punitive damages "shall be awarded not as

compensation to a plaintiff but solely to punish, penalize, or deter a defendant."

O.C.G.A. § 51-12-5.1 (c).  The Georgia Supreme Court succinctly articulated the

17

legislative intent of Georgia's punitive damages statute when it stated that the

limitation within the statute:

> strongly enforces the legislature's stated intent that the purpose of the statute is to punish the defendant, and not to provide compensation or . . . a windfall to an individual plaintiff. Rather, we think the purpose of this subsection is to authorize punishment of a defendant who has the potential to greatly damage society at large. The statute furthers this purpose by not allowing the first plaintiff to reach the courthouse with a product liability lawsuit to reap a windfall from the punitive damages, but instead requiring that three-quarters of the punitive damages awarded to be paid into the state treasury for the benefit of all Georgia citizens. Punishment and deterrence of the defendant being the purposes of the subsection, it is insignificant under the statute that the plaintiff does not receive the full award.

*Mack Trucks*, 436 S.E.2d at 638. Stated differently, because of the potential to

harm numerous citizens, all citizens should reap the benefit of an award of punitive

damages.

There can be little question that the ability of Georgia citizens to seek

punitive damages affects the "public interest." *See Bridges v. Phillips Petroleum

Comp.*, 733 F.2d 1153, 1156 (5th Cir. 1984). The Georgia punitive damages statute

diverts seventy-five (75) percent of punitive damages awards in product liability

actions into the State Treasury because the defendant's actions in products liability

cases damages not only the plaintiff, but society at large. O.C.G.A. § 51-12-

5.1(e)(2); *Mack Trucks*, 436 S.E.2d at 638.

18

As discussed herein above, it is well-settled that plaintiffs do not have a property interest in punitive damages. The purpose of punitive damages is not to compensate the plaintiff; plaintiffs are compensated through compensatory damages. Compensatory damages are "damages sufficient in amount to indemnify the injured person for the loss suffered." Black's Law Dictionary (7th ed. 1999). To "compensate" a plaintiff is to make them "whole." *Id*. Conversely, punitive damages are defined as those that are "awarded in addition to actual damages when the defendant acted with recklessness, malice and deceit" and which are "intended to punish and thereby deter blameworthy conduct . . ." *Id*. Punitive damages are intended to punish the defendant not to compensate the plaintiff. Moreover, punitive damages cannot make a plaintiff "whole" because the plaintiff has already been made "whole" through compensatory damages. When punitive damages are paid to the State, they "serve to compensate society for societal harm inflicted by defendants' outrageous conduct." E. Jeffrey Grube, *Note, Punitive Damages: A Misplaced Remedy*, 66 S. CAL. L. REV. 839, 853 (1993).

Unlike compensatory damages, punitive damages are entirely public policy based. "As courts have uniformly held, no plaintiff has a right to punitive damages: the purpose of punitive damages is to vindicate the public interest, not that of a particular plaintiff. Malcolm E. Wheeler, *The Constitutional Case for Reforming Punitive Damages Procedures*, 69 VA. L. REV. 269, 292 (1983). By enacting the

19

Tort Reform Act, the General Assembly of Georgia made a statement that punitive damages in a product liability action belong to all citizens of the State, rather than a single plaintiff, because all citizens were subjected to the risk. The majority of courts agree that plaintiffs do not have a right to punitive damages. Simply put, if the plaintiff has no vested property right in punitive damages, then the State does not "take" the plaintiff's property when it requires a portion of those damages be paid to the State.

There is no support grounded in either law or reason why a plaintiff, after being fully compensated for any and all personal injuries, should also be compensated for a wrong committed against the general public. Accordingly, Attorney General Olens requests this Court affirm the District Court's Order.

### D. The District Court's Order and the Jury's Verdict Should be Upheld.

The General Assembly of the State of Georgia has enacted a statute that is intended to provide for punitive damages in cases where a jury finds by clear and convincing evidence that the defendant's conduct was willful, malicious, fraudulent, wanton, oppressive, or demonstrated "that entire want of care which would raise the presumption of conscious indifference to the consequences." O.C.G.A. § 51-12-5.1(b). The stated intent of the statute is to "penalize, punish or deter a defendant" from such conduct. O.C.G.A. § 51-12-5.1(a). The jury, after hearing all of the evidence, has spoken. Based upon the evidence presented to the

20

jury in this case, Attorney General Olens submits that the verdict in this matter should not be disturbed.

While punitive damages are statutorily limited to $250,000 in most instances, the General Assembly specifically provided for unlimited punitive damages in a product liability actions. O.C.G.A. § 51-12-5.1(e)(1). This reflects the General Assembly's intention to treat product liability cases differently than other cases which may involve punitive damages. Most cases involve a dispute in which the harm resulting from the wrongdoer's actions is limited in scope (e.g., a reckless driver or a willfully indifferent premises owner). Comparatively, a dangerous and defective product has the potential to inflict harm on numerous consumers throughout the State of Georgia. Based on the evidence presented at trial, that is precisely what occurred in this situation. There are more than 70,000 cases currently pending which concern the use of transvaginal surgical mesh to treat pelvic organ prolapse and more than 11,000 pelvic repair mesh cases pending against Defendant. (JA: 6965). Many of these cases involve women in the State of Georgia that were implanted with this device.

This case involved three years of litigation. The jury considered voluminous evidence presented at trial, and found that the Avaulta Plus product sold by Defendant was defective in its design, and that Defendant failed to warn the Plaintiffs' implanting physician about the dangers of the product. (JA: 673-38).

21

The jury also found that the evidence presented at trial demonstrated clearly and convincingly that Bard's conduct met the standard for punitive damages in the State of Georgia. *Id.*

On appeal, Defendant neither challenges the jury's findings of defective design and failure to warn, nor the District Court's finding that there was sufficient evidence for the jury to award punitive damages. (JA: 7145-46 ). Based on the evidence presented at trial, it appears that the jury's finding of product defect and punitive damages were warranted as a matter of fact and as a matter of law. The State has an interest in protecting its citizenry from defective products that are sold by a company that exhibited "an entire want of care which would raise the presumption of conscious indifference to the consequences" and to deter the manufacture and sale of such products. O.C.G.A. § 51-12-5.1(a) &(b).

To overturn the jury's verdict in this matter would directly contravene the State of Georgia's strong public interest in protecting its citizens from dangerous products, and from the sort of egregious misconduct that the jury found to exist in this case. The District Court noted that "a judgment produced by fair procedures, an impartial jury, and 'collective deliberation' based on evidence and argument is 'entitled to a strong presumption of validity.'" (JA: 7137, citing *TXO Prod. Corp. v. Alliance Res. Corp.,* 509 U.S. 456-57 (1993). The record in this matter

22

demonstrates that a fair and deliberative process was utilized in this matter and

therefore, this Court should affirm the jury's verdict and the District Court's Order.

<u>CONCLUSION</u>

WHEREFORE, for all of the above and foregoing reasons, Intervenor urges

the Fourth Circuit to uphold the decision of the District Court finding O.C.G.A. §

51-12-5.1(e)(2) as constitutional .

Respectfully submitted,

SAMUEL S. OLENS                    551540
Attorney General

W. WRIGHT BANKS, JR.          036156
Deputy Attorney General

/s/ Julie Adams Jacobs
JULIE ADAMS JACOBS              003595
Senior Assistant Attorney General
40 Capitol Square, S.W.
Atlanta, Georgia 30334-1300
Telephone: (404) 463-5989
E-mail: jjacobs@law.ga.gov

23

## STATEMENT REGARDING ORAL ARGUMENT

Intervenor believes that oral argument is necessary for the Court's consideration of the legal issues involved in this case. Plaintiffs raise constitutional challenges to the State of Georgia's punitive damages statute which allocates seventy-five (75) percent of punitive damage awards in product liability cases, less the costs of litigation and attorney's fees, to the State's Treasury. O.C.G.A. § 51-12-5.1(e)(2). As a matter of Georgia law, punitive damages "shall be awarded not as compensation to a plaintiff but solely to punish, penalize, or deter a defendant." O.C.G.A. § 51-12-5.1 (c). The purpose of the statute is to punish defendants who have harmed society at large, not to provide a windfall to an individual plaintiff. *See Mack Trucks*, 436 S.E.2d at 638. Because matters involving the manufacture and sale of products which have great potential to harm numerous Georgia citizens, the General Assembly of Georgia has enacted a statute which allows all of its citizens to reap the benefit of an award of punitive damages.

This case involves important legal questions to the State of Georgia as its statute has been challenged as unconstitutional. A decision by this Court could have significant effect on future product liability cases in the State of Georgia. Attorney General Olens respectfully submits that oral argument will aid the Court's decisional process by allowing the parties to address any legal concerns that the Court might have after it has considered the written briefs.

24

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 5,226 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point font size in Times New Roman.

/s/ Julie Adams Jacobs_____
JULIE ADAMS JACOBS
Senior Assistant Attorney General

25

<u>CERTIFICATE OF SERVICE</u>

I, Julie Adams Jacobs, do hereby certify that on the 2nd day of July, 2015, the

BRIEF ON BEHALF OF INTERVENOR, was served on all parties or their

counsel through the ECF/CM system.


<u>/s/ Julie Adams Jacobs</u>
JULIE ADAMS JACOBS
Senior Assistant Attorney General

26